52 F.3d 321
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 James A. PAXTON, Administrator of the Estate of Rebecca
Paxton, Plaintiff-Appellant,
v.
Donna E. SHALALA, Secretary of Health and Human Services,
Defendant-Appellee.
 No. 94-2461.
 United States Court of Appeals, Fourth Circuit.
 Submitted March 28, 1995.
Decided April 18, 1995.
 
 George L. Fitzgerald, Charlotte, NC, for appellant. Mark T. Calloway, U.S. Atty., James M. Sullivan, Asst. U.S. Atty., Charlotte, NC, for appellee.
 Before HAMILTON and WILLIAMS, Circuit Judges, and SPROUSE, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Rebecca Paxton[1] appeals from the district court's order adopting the magistrate judge's report and recommendation upholding the determination of the Secretary of Health and Human Services, through an administrative law judge ("ALJ"), that Paxton was not eligible for disability insurance benefits because she failed to prove a listed disabling impairment and was able to perform sedentary work during the period she was eligible for disability benefits. Because we find the denial of benefits to be supported by substantial evidence, we affirm the judgment of the district court.
 
 
 2
 * Rebecca Paxton was born January 27, 1932. She completed twelve years of high school and one year of business school. She was forty-four years old on September 30, 1976, when she last met the special earnings requirement for entitlement to disability benefits pursuant to 42 U.S.C.A. Sec. 423(c) (West 1991). Thus, Paxton is only eligible for benefits if she can establish a disability prior to this date. Paxton's last employment was as an insurance clerk. In this capacity, Paxton described her duties as: opening envelopes, making deposits, and operating an adding machine, typewriter, telephone, and postage machine. Paxton ceased working in 1971 so that she could spend more time with her young child.
 
 
 3
 After 1971, Paxton gained a considerable amount of weight. She testified that she became short of breath, her feet swelled, and she could not wear shoes because her ankles bulged over the top. Paxton testified that this condition caused her pain that felt like pins sticking in her. Paxton was treated by Dr. Brown from approximately 1970 through 1979. The only medical records submitted from Dr. Brown were a single medical report prepared in 1981 and a synopsis of a 1981 telephone conversation, both prepared for the purpose of determining Paxton's disability status. The medical report describes Paxton as weighing in excess of 300 pounds in 1974, 1975, and 1978. Doctor Brown did not treat Paxton during 1976. The report noted that in 1978, Paxton suffered from bronchitis, diabetes mellitus, chronic cystitis, and 2+ dependent edema in her lower legs and ankles. The report does not mention varicosities. In the subsequent telephone conversation with Dr. Brown's secretary, the substance of which was later adopted by Dr. Brown, the findings in the report were reiterated. That conversation also contained a statement that Paxton has had chronic venous insufficiency with superficial varicosities in her lower extremities with pain on weight bearing and persistent edema.
 
 
 4
 Paxton was referred to Dr. Stuckey in 1978. Doctor Stuckey treated Paxton's diabetes and an ulceration on her leg. Doctor Stuckey's reports from thirty-six visits with Paxton do not mention the presence of varicosities. Paxton was hospitalized in May 1978 for treatment of "severe necrotic cellulitis of the abdomen." The hospital admission report contains findings from a physical examination and makes no mention of varicosities.
 
 
 5
 Doctor Henry examined Paxton in 1981. Doctor Henry confirmed Paxton's obesity and diabetes. Doctor Henry also diagnosed hypertension, and he specifically stated that Paxton had no varicosities, no brawny edema, and no ulcerations. Doctor Kantor testified that he doubted the accuracy of Dr. Brown's 1981 report that Paxton suffered from varicosities. According to Dr. Kantor, if Paxton had varicosities in 1976, she should still have them in 1981. Doctor Kantor further testified that in his opinion, Paxton could perform sedentary work in 1976.
 
 II
 
 6
 This Court reviews the final decision of the ALJ to determine whether the decision is supported by substantial evidence and whether the correct law was applied. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir.1990). Substantial evidence is defined as " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir.1966). As long as the decision is supported by substantial evidence, it must be affirmed even if this Court disagrees with the final outcome of the case. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir.1982).
 
 
 7
 A sequential test is used to determine whether a person is disabled and, hence, entitled to social security benefits. See 20 C.F.R. Sec. 404.1520.[2] The ALJ first concluded that Paxton had not engaged in substantial gainful activity during the relevant period. See 20 C.F.R. Sec. 404.1520(b). At the second step, the ALJ concluded that Paxton was severely impaired from obesity. See 20 C.F.R. Sec. 404.1520(c). The ALJ determined at step three, however, that Paxton's impairment from obesity did not meet or equal one listed in 20 C.F.R. Sec. 404, Subpt. P, App. 1. See 20 C.F.R. Sec. 404.1520(d).[3] On appeal, Paxton only challenges the ALJ's conclusion at step three that she failed to meet an impairment listed in 20 C.F.R. Sec. 404, Subpt. P, App. 1. Specifically, Paxton contends that the 1981 report from her treating physician during the relevant period supported a finding that she satisfied the requirements of a disabling impairment from obesity at listing 9.09(D). Paxton claims that the ALJ erred in failing to accord that report sufficient weight.
 
 
 8
 We reject this argument because the ALJ's decision was supported by substantial evidence. To meet the requirements of 9.09(D), Paxton needed to establish that her weight was equal to or greater than the value specified at Table I for a woman of her height, and that she had "[c]hronic venous insufficiency with superficial varicosities in a lower extremity with pain on weight bearing and persistent edema." 20 C.F.R. Sec. 404, Subpt. P, App. 1, 9.09(D).
 
 
 9
 Paxton clearly satisfied the first step. According to the tables, a woman of Paxton's height, 65 inches, must weigh at least 266 pounds to satisfy the requirement. The medical records unanimously support a finding that Paxton weighed in excess of 300 pounds at all relevant times. There is conflicting evidence, however, concerning whether Paxton suffered from chronic venous insufficiency with superficial varicosities in a lower extremity. The only evidence that she satisfied this requirement was a record of a 1981 telephone conversation with Dr. Brown's secretary. Doctor Brown later adopted the substance of this conversation, which contained a statement to the effect that Paxton satisfied the requirements of 9.09(D). However, no medical records prepared during the relevant period were introduced. And, the only report from Dr. Brown, prepared two months prior to the telephone conversation, failed to mention venous insufficiency or varicosities.
 
 
 10
 We have held that "the opinion of a claimant's treating physician must be given great weight." Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir.1987). We have also held, however, that the ALJ may disregard a treating physician's opinion if there is persuasive contradictory evidence. Smith v. Schweiker, 795 F.2d 343, 345-46 (4th Cir.1986). The ALJ properly disregarded Dr. Brown's statement in the face of persuasive contradictory evidence. The ALJ noted that Dr. Henry examined Paxton in 1981 and specifically stated that she did not have varicosities or edema. The ALJ found persuasive Dr. Kantor's testimony that if Paxton did not have varicosities or edema in 1981, she likely did not in 1976. The ALJ also took note that Dr. Brown omitted this vital information from a report prepared two months earlier, and that the telephone conversation, although adopted by Dr. Brown, was actually conducted with his secretary. Moreover, Paxton's reports from examinations with Dr. Stuckey and during her hospitalization in 1978 fail to mention venous insufficiency or varicosities. Under these circumstances, the ALJ did not err in finding persuasive contradictory evidence that Paxton did not satisfy the requirement of showing disability under 20 C.F.R. Sec. 404, Subpt. P, App. 1, 9.09(D).
 
 
 11
 Accordingly, we affirm the judgment of the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 AFFIRMED
 
 
 [1]
 On January 31, 1995, while this appeal was pending, Rebecca Paxton died. Accordingly, pursuant to Fed. R.App. P. 43(a), James A. Paxton, administrator of the estate, was substituted as the plaintiff in this action by Court order
 
 
 [2]
 All references to the C.F.R. are to the 1994 edition of the regulations
 
 
 [3]
 Because the ALJ concluded that Paxton had not satisfied the requirements of showing a disabling impairment that met one listed at 20 C.F.R. Sec. 404, Subpt. P, App. 1, the ALJ proceeded to evaluate Paxton's prior relevant work at step four. The ALJ concluded that prior to September 1976, Paxton retained the residual functional capacity to perform sedentary work. The ALJ noted that Paxton was obese during this time period, but that neither diabetes nor cellulitis of the abdominal wall were diagnosed until well after the date Paxton was last insured for social security disability benefits. The ALJ also analyzed Paxton's subjective complaints of pain. The ALJ discredited her testimony that she had persistent pain in her lower extremities during the relevant period because Paxton's testimony was contradicted by a disability report filed by her in 1981, in which she stated that during the relevant period she was able to cook, clean, shop, and visit friends and relatives. The ALJ noted that Paxton's description of her activities was consistent with a residual functional capacity for sedentary work. The ALJ concluded that Paxton's impairments did not preclude her from returning to her past work as an insurance clerk during the relevant period. Paxton does not challenge this finding on appeal